Patricia Ann ENFIELD,
et al., Plaintiffs,

v.

ATLANTIC RICHFIELD COMPANY,
et al., Defendants.

Marcy Lee HURD, and Gary C. Rhodes,
Co–Trustees of the Marcy Lee Hurd
Trust, Plaintiffs,

v.

ATLANTIC RICHFIELD COMPANY,
Defendant.

Nos. CIV–88–932–A, CIV–87–2032–A, CIV–88–1427–A, CIV–88–1508–A, CIV–88–1509–A, CIV–88–1525–A, CIV–88–1612–A, CIV–89–637–A and CIV–88–932–A.

United States District Court,
W.D. Oklahoma.

Oct. 17, 1989.

Randall J. Wood, Monte E. Johnson, Robert N. Barnes, Patranell B. Dykeman, Stack & Barnes, Oklahoma City, Okl., for plaintiffs.

A.P. Murrah, Jr., Cleta Deatherage Mitchell, Roy J. Davis, Murrah & Davis, Oklahoma City, Okl., J. Randall Miller, Moyers Martin Santee Imel & Tetrick, Tulsa, Okl., for defendants.

### ORDER

ALLEY, District Judge.

The defendant Atlantic Richfield Company ("ARCO") has moved for partial summary judgment on the trespass claim by Marcy Lee Hurd and Gary C. Rhodes as Co–Trustees of the Marcy Lee Hurd Trust ("the Hurds"). The Hurds have filed their objection to ARCO's motion. After reviewing the briefs and the relevant law, the

---

**5.** The court further notes that while dismissal may appear to be harsh, plaintiffs may seek redress in the state courts.

Court now makes its determination and denies ARCO's motion.

ARCO's central premise is that an oil and gas lease with an habendum clause such as this one may only terminate upon the decree of the court. In other words, ARCO argues that there is no such thing as termination of a lease under its own terms. The Hurds argue that a court order is only necessary for termination when the underlying issue is breach of a covenant, and not when the issue is whether production in paying quantities has ceased (the habendum clause).

█ As support, ARCO relies heavily on *Stewart v. Amerada Hess Corp.*, 604 P.2d 854 (Okla.1979). Part II of that opinion discussed whether any cessation of production in the secondary term would automatically result in termination. The court did hold, as ARCO argues, that any cessation will not automatically terminate a lease in its secondary term. However, the court continued to explain that "the lease continues in existence so long as interruption of production in paying quantities does not extend *for a period longer than reasonable or justifiable* in light of all the circumstances involved." *Amerada Hess*, 604 P.2d at 858 (emphasis supplied). This language does not support ARCO's proposition that no lease may automatically terminate. Instead, it says that a lessee has a reasonable length of time to resume production in paying quantities after "any cessation." [1]

ARCO has confused the need for a court order for termination with the need for a court order for a remedy. Of course adjudication of rights is necessary to effect a remedy and to determine damages when a lease has terminated and the lessor claims harm. But that adjudication is not itself what terminates the lease. What terminates the lease is prior behavior of the parties under the terms of the lease.

█ In *Hoyt v. Continental Oil Co.*, 606 P.2d 560 (Okla.1980), the court stated:

> After the primary term, the effect of the cessation of production clause is to modify the habendum clause and to extend or preserve the lease while the lessee resumes operations designed to restore production. If the lessee fails to resume operation within the 60–day period provided in this clause neither the cessation of production clause or the habendum clause is satisfied *and the lease terminates upon the expiration of the given time period.*

*Hoyt*, 606 P.2d at 563 (emphasis supplied).

More succinctly put, "a lease containing the habendum clause as here considered *will expire under its own terms* at any time upon failure of the lessee to produce oil or gas in paying quantities subsequent to the expiration of the primary term of the lease." *Woodruff v. Brady*, 181 Okl. 105, 72 P.2d 709, 711 (1937) (emphasis supplied).

The plain language here shows that leases can and do terminate "automatically," when certain events occur. It may then become necessary to adjudicate the matter to determine (1) whether and when those certain events occurred (i.e. cessation of production in paying quantities) and (2) the damages, if any, suffered by the lessor as a result of the termination.

Thus, in the case now before the Court, adjudication is necessary to determine whether the lease did terminate, and if so, when. That date may well be far in the past, if the evidence so supports. But it will not be the act of adjudication which terminates the lease. It will be proof by the Hurds, if they can produce sufficient evidence, that production in paying quantities ceased on date "x", and did not resume within "y" time. The lease may then be declared terminated as of that date.[2]

The trespass claim obviously may not be dismissed at this time, until ARCO proves that production in paying quantities never

---

1. A reasonable length of time to resume production in paying quantities is generally used in the absence of a specific period of time set by the parties in the lease.

2. The Court makes no assumption about what evidence the Hurds will produce, or the outcome thereof. This language is only to demonstrate the proper procedure under the circumstances.

ceased under the habendum clause of this particular lease. There is a trespass claim to be asserted, and it will die only if the lease has not terminated. ARCO's motion for summary judgment on the trespass claim is denied.

It is so ordered.